UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANITA SERRANO, | ) | CASE NO. 1:17CV2644 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| NANCY A. BERRYHILL[1], | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | REPORT AND RECOMMENDATION |
| SECURITY ADMINISTRATION, | ) | OF MAGISTRATE JUDGE |
| | ) | |
| Defendant. | ) | |

Plaintiff Anita Serrano ("Plaintiff") requests judicial review of the decision of the Commissioner of Social Security Administration ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  ECF Dkt. #1. In her brief on the merits, filed on May 8, 2018, Plaintiff asserts that the administrative law judge ("ALJ"): (1) violated the treating physician rule; and (2) issued a decision that is not supported by substantial evidence.  ECF Dkt. #13.  Defendant filed a response brief on June 7, 2018.  ECF Dkt. #14.  Plaintiff did not file a reply brief.

For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

## I.     PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI in October 2014 alleging a disability onset date of January 12, 2009.  ECF Dkt. #10 ("Tr.") at 133-34, 228-37.[2]  These claims were denied initially and upon reconsideration.  *Id.* at 167,72, 177-83.  Plaintiff appeared

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather than the page numbers assigned by the CM/ECF system.  When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages.  Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

and testified at a hearing before an ALJ on September 20, 2016.  *Id*. at 68.  On that same date, Plaintiff filed a motion to amend her alleged onset date to October 21, 2014.  *Id.* at 255.  On March 8, 2017, the ALJ issued a decision denying Plaintiff's claims for DIB and SSI.  *Id.* at 50. Subsequently, the Appeals Council denied Plaintiff's request for review.  *Id.* at 1.  Accordingly, the decision issued by the ALJ on March 8, 2017, stands as the final decision.

Plaintiff filed the instant suit on December 19, 2017.  ECF Dkt. #1.  On May 8, 2018, Plaintiff filed a brief on the merits.  ECF Dkt. #13.  Defendant filed a response brief on June 7, 2018.  ECF Dkt. #14.  Plaintiff did not file a reply brief.

## II.      MEDICAL AND TESTIMONIAL EVIDENCE

### A.      Medical Evidence

One week before her alleged onset date of October 21, 2014, Plaintiff complained of: pain for the last six years in her leg and lower back; depression; sleeping difficulties; a poor appetite; anxiety; fatigue; anger control issues; emotions that were out of control; and visual hallucinations.  Tr. at 313-14.  Plaintiff was diagnosed with "probable" personality disorder and depression.  *Id.* at 313.  It was also noted that Plaintiff demanded narcotics or benzodiazepines at the end of the visit and when informed that she would not be given a prescription for either, indicated that she was unwilling to discuss further treatment options and left the clinic without undergoing lab work.  *Id.*  It was further stated that Plaintiff stood in the main clinic hallway yelling forcefully that she did not like the treatment provided.  *Id.*

On November 12, 2014, Plaintiff sought treatment for lower back pain, chills, and nausea.  Tr. at 343.  It was noted that Plaintiff displayed normal mood, affect, and behavior.  *Id.* at 344.  The following week, Plaintiff complained of anxiety, depression, and mood lability, and was diagnosed with a history of mood disorder.  *Id.* at 341-42.  In early December 2014, Plaintiff reported increased back pain, trouble sleeping, depression, and mood lability.  *Id.* at 339-40.  On December 17, 2017, Plaintiff reported that she hurt "everywhere, but particularly her back" and stated that the urine screen at her last appointment was positive because she took narcotic pain medication prescribed to her mother.  *Id.* at 336.  Plaintiff displayed labile mood and was alert, cooperative, pleasant, and in no actute distress while standing throughout the entire examination.

-2-

*Id.* at 337.  Plaintiff was assessed with chronic pain, degeneration of lumbar or intervertebral discs, mood disorder, a history of gestational diabetes, and hyperlipidemia.  *Id.* at 338.  After being released from jail, Plaintiff reported depression, anxiety, and anger control issues in January 2015.  Tr. at 485.  Plaintiff stated that she had four prior arrests and that she became aggressive when she was angry.  *Id.* at 498.  Plaintiff failed to attend her four scheduled follow-up appointments throughout February 2015.  *Id.* at 501-504.

In early February 2015, Mitchell Wax, Ph.D., conducted a psychological evaluation.  Tr. at 467.  Dr. Wax noted that Plaintiff was a highly agitated woman, but acted more appropriately after being confronted.  *Id.* at 469.  It was noted that Plaintiff described her mood as depressed and that she appeared anxious and fretful.  *Id.* at 470.  Dr. Wax further opined that Plaintiff was functioning in the low average range of intelligence and could maintain herself in the community without outside resources.  *Id.* at 470.  During the evaluation, Plaintiff stated that she: cooked full meals regularly and was a good cook; cleaned regularly; washed dishes; washed laundry and sorted it by color because she was a "neat freak"; vacuumed; cared for her children who were four and six years old; and went grocery shopping during the day and otherwise "kept busy."  *Id.* at 469.  Additionally, Plaintiff stated that she got along well with her boyfriend and that they attended church weekly.  *Id.*  Dr Wax diagnosed Plaintiff with bipolar disorder and personality disorder with borderline and obsessive-compulsive features.  *Id.* at 470.  Further, Dr. Wax stated that Plaintiff would have difficulty: understanding, remembering, and carrying out instructions; maintaining attention and concentration on a job; and responding appropriately to work pressures in a work setting.  *Id.* at 471.

On March 2, 2015, Plaintiff reported that she was very moody and had anger outbursts, and it was noted that she actively engaged and participated in the session.  *Id.* at 505.  Later in March 2015, Plaintiff stated that the current situation with her ex-husband was contributing to her symptoms of depression.  *Id.* at 551.  On March 26, 2015, Plaintiff underwent an assessment with a nurse practitioner during which it was noted that she was shaking and crying.  *Id.* at 530, 538.  Plaintiff requested Klonopin and Xanax and the nurse practitioner "educated [Plaintiff] about these meds but doubt that [Plaintiff] heard the message."  *Id.* at 539.  The nurse

practitioner also noted that Plaintiff: had to sleep with a nightlight when she did sleep; displayed a labile mood; was cutting herself; and was counting in twos all day.  *Id.*  Plaintiff was diagnosed with major depressive disorder, obsessive compulsive disorder, borderline personality disorder, and arthritis.  *Id.* at 539-40.

Medical records from the Center for Families and Children dated from February 5, 2015, through December 23, 2015, indicated that Plaintiff: felt angry, frustrated, hopeless, sad, and depressed; had trouble sleeping; was experiencing anxiety; had a variable appetite; was cutting herself; had pressured speech; and reported poor energy and a chaotic life.  Tr. at 562, 564, 568, 574, 582, 596, 598, 607, 657.  During this period, Plaintiff was diagnosed with major depressive disorder (recurrent, moderate), posttraumatic stress disorder, obsessive-compulsive disorder, and borderline personality disorder.  *Id.* at 584, 594, 598, 658.  From July 2015 through the end of 2015, Plaintiff's complaints were often in conjunction with housing issues and/or relationship problems.  *Id.* at 596, 607, 619, 624.  Additionally, Plaintiff often missed appointments.  *Id.* at 566, 570, 580, 586, 590, 609, 611, 614, 616, 659.

Plaintiff continued to miss appointments in 2016 and stated in February 2016 that transportation was a problem.  Tr. at 631, 633, 636, 651, 676, 696, 700, 703.  On January 13, 2016, Plaintiff presented for her first appointment with Carol Macknin, M.D., and reported that she had stopped taking her medication about a month prior to the appointment.  *Id.* at 660.  Dr. Macknin prescribed new medications and recommended that Plaintiff attend therapy appointments.  *Id.* at 661.  In February 2016, Plaintiff told Dr. Macknin that she had stopped taking her new medication because it caused drowsiness and nausea.  *Id.* at 662.  Throughout 2016 Plaintiff continued to report: that she would hit others when angered or punch windows and smash furniture; that her emotions were out of control; night terrors; depression; difficulty feeling anything emotionally; anxiety; frustration; problems sleeping; panic attacks; anger; thoughts of harming herself; a poor appetite; hopelessness; and cutting herself.  *Id.* at 626, 630, 634, 635, 639-40, 648-49, 653, 660, 662, 664, 678-79, 681, 683, 685, 689, 693, 701, 705, 712, 719-20, 724, 752, 754.  Plaintiff was assessed with bipolar affective disorder, depression, and a

-4-

borderline personality disorder during her course of treatment in 2016.  *Id.* at 661, 663, 665, 702, 706, 753, 755.

On May 31, 2016, Plaintiff reported to Dr. Macknin that she was "feeling calmer."  Tr. at 701.  Plaintiff stated that she did not care about housekeeping, but her fiancé indicated that she was "keeping house very well as well as cooking."  *Id.*  Additionally, Dr. Macknin noted that Plaintiff's fiancé often provided answers that suggested she may be more active than reported. *Id.*  Dr. Macknin also completed a medical source statement regarding Plaintiff's mental capacity on May 31, 2016.  *Id.* at 667.  The medical source statement indicated that Plaintiff's capability to make occupational adjustments was limited as Dr. Macknin checked "occasional" or "rare" in nearly all categories of functioning.  *Id.* at 667-68.  Dr. Macknin opined that Plaintiff was similarly limited in her ability to make occupational adjustments in the areas of intellectual functioning and making personal and social adjustments as all of the boxes on the form were checked as "occasional" or "rare" except for one category in the area of making personal and social adjustments.  *Id.*  Plaintiff was diagnosed with bipolar affective disorder II (mixed), borderline personality disorder, and posttraumatic stress disorder.  *Id.* at 668.

In January 2017, Plaintiff reported that she had cut herself for the first time in nine months, but that she did not intend to harm herself again.  Tr. at 743.  Plaintiff also stated that she was "getting along well" with her new boyfriend. *Id.* at 743.  It was noted that Plaintiff was actively engaged, pleasant, and talkative during the session.  *Id.*  In late January 2017, Plaintiff complained to Dr. Macknin that her medication made her angry and more depressed, and Dr. Macknin noted that Plaintiff had made some progress towards her objectives.  *Id.* at 757.  During this visit, Plaintiff reported that she had not attended counseling for "several months."  *Id.* at 756.

### **B.** **Testimonial Evidence**

On September 20, 2016, the ALJ held a hearing with Plaintiff and her attorney present, and a vocational expert ("VE") present via telephone.  Tr. at 70.  On examination by the ALJ, Plaintiff testified she did not always attend her medical appointments due to a lack of transportation.  *Id.* at 76.  Continuing, Plaintiff stated that she lived with her significant other and that they performed household chores together.  *Id.* at 82-83.  Plaintiff was then examined by her

-5-

attorney.  *Id.* at 83.  When asked why she was unable to work, Plaintiff testified that she had two main problems, namely, that "physically it hurts to lift too much and maneuver my hip" and that her mental impairments caused her to hate herself.  *Id.* at 84.  Next, Plaintiff stated that she had panic attacks when she left the house, problems sleeping, and that she continued cutting herself. *Id.* at 86-87.  When asked how often she ate, Plaintiff stated that she only ate every couple of days and that her obesity and weight gain were due to her medications.  Tr. at 88.  Plaintiff stated that she could lift "maybe fifteen pounds," could only stand in twenty-minute increments, could walk less than one block, and could sit for twenty minutes.  *Id.* at 89-91.

Following the examination of Plaintiff, the ALJ examined the VE.  Tr. at 94.  The VE testified that an individual with Plaintiff's RFC, age, education, and work experience could perform work as a cleaner (housekeeper), mail clerk, and clerical assistant.  *Id.* at 96-97. Additionally, on examination by Plaintiff's attorney, the VE testified that all work would be precluded if the individual: was off task fifteen percent or more of the time; were to miss two days or more on an ongoing basis; required two to three extra twenty to thirty minute breaks; and/or had emotional outbursts.  *Id.* at 97-98.  After Plaintiff's attorney finished the examination of the VE, the ALJ concluded the hearing.  *Id.* at 99.

## III.    RELEVANT PORTIONS OF THE ALJ'S DECISION

On March 8, 2017, the ALJ issued a decision denying Plaintiff's claims for DIB and SSI. Tr. at 50.  The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2013, and that she had not engaged in substantial gainful activity since October 21, 2014, the amended alleged onset date.  *Id.* at 55.  Continuing, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; obesity; bipolar affective disorder II; mixed borderline personality disorder; and posttraumatic stress disorder. *Id.*  The ALJ then stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 56.

After consideration of the record, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with the following additional limitations:

-6-

occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, or crawl; understand and remember one-to-four step tasks and carry out those tasks in setting without demands for a fast pace or high production; interact on an occasional and superficial basis with familiar others in a non-public setting; adapt to settings where changes are infrequent; no jobs requiring arbitration, negotiation, or conflict resolution; no management or supervision of others; and no responsibility for the health, safety, or welfare of others.  *Id.* at Tr. at 57.

After making the RFC finding, the ALJ stated that Plaintiff was unable to perform any past relevant work.  Tr. at 61.  The ALJ then indicated that Plaintiff was a younger individual on the alleged onset date, had a high school education, and was able to communicate in English.  *Id.* The ALJ determined that the transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled.  *Id.* at 61-62.  Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform.  *Id.* at 62.  For these reasons, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 21, 2014, through the date of the decision.  *Id.*

**IV.**     **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits.  These steps are:

1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.   An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see  20 C.F.R.  § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.     If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.     If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V.     STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cole v. Astrue*, 661 F.3d 931, 937(citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal citation omitted)).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007).  Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled.  The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001).  However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon

the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## VI.    LAW AND ANALYSIS

### A.    Treating Physician Rule

Plaintiff asserts that the ALJ erred in failing to give deference or properly analyze the opinion of Dr. Macknin, Plaintiff's treating psychiatrist.  ECF Dkt. #13 at 9.  An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  If an ALJ decides to discount or reject a treating physician's opinion, he or she must provide "good reasons" for doing so.  Social Security Rule 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*  If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir. 2010).  The Sixth Circuit has held that an ALJ's failure to identify the reasons for

-9-

discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, 413 Fed.Appx. 856, 864 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ).  However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence.  *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004).  Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion.  *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

Plaintiff avers that the ALJ erred by assigning only limited weight to the opinion of Dr. Macknin on the basis of the length of the treating relationship and the "vague and conclusory" nature of the opinion.  ECF Dkt. #13 at 9.  Plaintiff recognizes that Dr. Macknin had only treated her for approximately four months when the opinion was issued, but states that she had been receiving treatment at the facility where Dr. Macknin practiced, the Center for Families and Children, for approximately fourteen months when the opinion was issued.  *Id.* at 11.  Continuing, Plaintiff asserts that many patients now view their treating source as an entity rather than any single individual.  *Id.* (citing *Pater v. Comm'r of Soc. Sec.*, Case No. 1:15CV1295, 2016 WL 3477220 (N.D. Ohio June 27, 2016)).  Additionally, Plaintiff also asserts that the ALJ erred in determining that Dr. Macknin's opinion was vague and conclusory.  *Id.* at 12.  Plaintiff recognizes that the Dr. Macknin did not elaborate on the basis for the limitations contained in the opinion, but states that Dr. Macknin did indicate the diagnoses upon which the limitations were based.  *Id.*  Continuing, Plaintiff states that the medical record supports the limitations opined by Dr. Macknin and cites to the treatment notes discussed above.  *Id.* at 12-13 (internal citations omitted).

Plaintiff also claims that the ALJ failed to acknowledge the consistency of the opinion submitted by Dr. Macknin with the opinion offered by Dr. Wax.  ECF Dkt. #13 at 13.  Continuing, Plaintiff states that the opinions of Dr. Macknin and Dr. Wax were consistent

regarding Plaintiff's limitations in: social functioning; the ability to understand, remember, and carry out complex, detailed, and simple job instructions; the ability to maintain attention and concentration; and the ability to deal with work stress. *Id.* Plaintiff then reiterates that she had a lengthy treatment history with Dr. Macknin and the Center for Families and Children. *Id.* at 14.

Defendant contends that the ALJ provided good reasons that were supported by substantial evidence for the weight assigned to Dr. Macknin's opinion and the conclusion that Plaintiff's allegations of disability were inconsistent with the weight of the evidence. ECF Dkt. #14 at 13. Continuing, Defendant states that the ALJ properly considered Dr. Macknin's short treating relationship with Plaintiff, which was only a few months before the questionnaire was completed, when determining that the opinion was entitled to less weight. *Id.* Defendant avers that the Sixth Circuit has explained that the "regulations recognize that the nature and extent of a treating relationship is relevant to the weight given to a physician's opinion." *Id.* at 13-14 (quoting *Rudd v. Comm'r of Soc. Sec.*, 532 F. App'x 719, 729 (6th Cir. 2013) (internal citations omitted)). Regarding Plaintiff's assertion that she had been treated at the Center for Families and Children for over a year when Dr. Macknin issued the opinion, Defendant asserts that the regulations provide that a treating physician's opinion is generally given more weight than other sources to the extent the physician "has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment." *Id.* at 14 (quoting 20 C.F.R. § 416.927(c)(2)(i)). Defendant states that the ALJ's responsibility was to apply these regulations and policy in evaluating the evidence, including Dr. Macknin's opinion. *Id.*

Next, Defendant avers that the ALJ also found that Dr. Macknin's opinion was vague and conclusory. ECF Dkt. #14 at 14. Defendant states that Dr. Macknin merely checked a series of boxes and listed diagnoses without any explanation of why Plaintiff was as limited as she alleged. *Id.* (citing Tr. at 667-68). Continuing, Defendant cites 20 C.F.R. § 416.927(c)(3) for the assertion that a conclusory opinion deserves less weight. *Id.* at 14-15. Defendant also states that the Sixth Circuit has recognized that an ALJ may properly discount a treating physician's conclusory checkbox format questionnaire. *Id.* at 15. Further Defendant states that the ALJ cited additional good reasons for finding that Dr. Macknin's opinion was not supported by

-11-

substantial evidence, specifically that Plaintiff: received only irregular treatment for her mental health, consisting largely of working with a caseworker to get financial assistance and prepare for child custody and divorce proceedings; had relatively few counseling visits and medication management appointments during the relevant period; and requested strong medications, but her medical providers found that more conservative measures were sufficient.  *Id.* (citing Tr. at 59-60, 313-14, 474, 530, 539, 574, 582, 592, 596, 619, 630-35, 654, 658, 660, 664, 678-85, 688, 719, 722, 724, 731, 748, 752, 756).

Defendant continues, stating that the ALJ also reasonably considered that Plaintiff failed to attend many of her medical appointments.  ECF Dkt. #14 at 16 (citing Tr. at 59-60, 586, 588, 590, 611, 616, 620, 631-32, 636, 655-56, 689-90, 698, 700, 703-704, 714, 737, 740, 742, 749, 751).  Next, Defendant indicates that the ALJ also noted that Plaintiff did not always take medications as prescribed.  *Id.* (citing Tr. at 59, 582, 660, 691).  According to Defendant, the ALJ properly concluded that Plaintiff's noncompliance with treatment recommendations and her failure to attend numerous medical appointments suggested that her impairments were not as limiting as alleged.  *Id.*  Additionally, Defendant states that when Plaintiff did attend her appointments, she often displayed behavior showing that she was not as limited as alleged.  *Id.* at 16-17.

Next, Defendant asserts that the opinion evidence supported the ALJ's decision.  ECF Dkt. #14 at 17.  First, Defendant states that the ALJ assigned proper weight to the opinions of the state agency reviewing physicians, limiting Plaintiff to simple work with an additional limitation regarding interaction, because the opinions were consistent with the record as a whole.  *Id.* at 17-18.  Defendant then avers that although Plaintiff alleges that Dr. Macknin's opinion merited more weight because it was consistent with Dr. Wax's opinion, that ALJ also gave good reasons for discrediting Dr. Wax's opinion.  *Id.* at 18.  Namely, Defendant states that the ALJ found that Dr. Wax's opinion was somewhat vague and appeared to be based on Plaintiff's subjective allegations rather than a medical evaluation of her capabilities.  *Id.*  Regarding Plaintiff's claim that the ALJ should have addressed more regulatory factors, Defendant states that the ALJ was

not required to provide analysis concerning every regulatory factor when addressing the opinion.
*Id.* at 19 (citing *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6ᵗʰ Cir. 2011)).

The ALJ provided good reasons for assigning limited weight to Dr. Macknin's opinion.
Plaintiff asserts that the ALJ should not have considered the length of Plaintiff's treatment with
Dr. Macknin when assigning limited weight to the opinion because Plaintiff had been treated at
the Center for Children and Families, where Dr. Macknin practiced, for over a year.  Regardless
of whether the proper consideration should have been Plaintiff's treating relationship with Dr.
Macknin or the Center for Families and Children as a whole, the opinion submitted by Dr.
Macknin was correctly characterized as vague and conclusory by the ALJ.  *See* Tr. at 61.  The
Sixth Circuit has explained that an ALJ may properly discount a treating physician's opinion
when the opinion is in the format of a conclusory checkbox questionnaire.  *Ellars v. Comm'r of
Soc. Sec.*, 647 F. App'x 563, 566 (6ᵗʰ Cir. 2016).  Dr. Macknin's opinion consists of a two-page
checkbox questionnaire.  Tr. at 667-68.  While the questionnaire does include a short list of
Plaintiff's diagnoses, nowhere on the questionnaire does Dr. Macknin explain how the diagnoses
result in the extreme limitations contained in the opinion.  *Id.*  Dr. Macknin checked "rare" or
"occasional," indicating a high degree of limitation, in twenty-one of the twenty two categories
considered on the questionnaire.  *Id.*  Nowhere in the opinion does Dr. Macknin explain why
Plaintiff's mental impairments constitute such extreme limitations and no medical testing or
observations are cited.  *Id.*

Plaintiff also claims that Dr. Macknin's opinion was consistent with Dr. Wax's opinion,
however, the ALJ also provided good reasons for assigning limited weight to Dr. Wax's opinion.
Tr. at 61.  The ALJ stated that Dr. Wax did not attempt to quantify Plaintiff's alleged degree of
functional difficulty and the opinion appeared to be based on Plaintiff's presentation during the
examination rather than an independent evaluation of her capabilities.  *Id.*  While Plaintiff states
that Dr. Macknin's opinion was consistent with the opinion of Dr. Wax, she fails to establish that
the ALJ improperly weighed Dr. Macknin's opinion.  Accordingly, the fact that Dr. Macknin's
opinion was consistent with Dr. Wax's opinion does not change the fact that Dr. Macknin's
opinion was not supported by medical evidence.  Moreover, the ALJ properly determined that

-13-

Dr. Wax's opinion was based largely on Plaintiff's subjective complaints rather than an independent evaluation of her capabilities. *See id.* at 61. Further, the ALJ noted that, despite Dr. Wax's opinion, Plaintiff was able to concentrate during most of her case management visits and other visits. *Id.* For these reasons, Plaintiff has failed to show that the ALJ violated the treating physician rule.

### B. Substantial Evidence

Plaintiff also asserts that Plaintiff's major depressive disorder meets or medically equals the requirements for disability pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04. ECF Dkt. #13 at 14. Continuing, Plaintiff states that the medical record shows findings of: depression/depressed moods; no interest or hobbies; sleep disturbance; decreased energy; and suicidal thoughts. *Id.* at 15 (citing Tr. at 313, 339, 470, 486, 530-31, 535, 564, 582, 592, 596, 630, 639, 657, 660, 662, 664, 701, 705, 712, 719, 720, 752, 754). Plaintiff also notes that the ALJ determined that she had a marked impairment in interacting with others. *Id.* at 15-16. According to Plaintiff, the ALJ erred in determining that she had only mild limitations in adapting or managing oneself. ECF Dkt. #13 at 16. Plaintiff states that the ALJ excluded evidence that she: experienced anger and frustration, and that her emotions were out of control; had mood lability and mood swings; was aggressive when provoked; had a chaotic life; and engaged in self harm. *Id.* at 16-17. According to Plaintiff, the ALJ purposely excluded this evidence when issuing the decision. *Id.* at 17.

Defendant contends that substantial evidence supports the ALJ's conclusion that Plaintiff's impairments did not meet or medically equal Listing 12.04. ECF Dkt. #14 at 20. Specifically, Defendant states that the ALJ expressly considered Listing 12.04, but concluded that the medical evidence did not establish that Plaintiff met the listing. *Id.* (citing Tr. at 56-57). Defendant correctly indicates that in order to meet the required level of severity for Listing 12.04, a claimant must show that her mental impairments resulted in an extreme limitation in at least one or a marked limitation in at least two of the following domains: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* at 20-21 (citing 20 C.F.R. Part 404, Subpart P,

-14-

Appendix 1, § 12.04). According to Defendant, Plaintiff has the burden at step three of demonstrating, via medical evidence, that her impairments meet all the specific criteria of a particular listing. *Id.* at 21.

Continuing, Defendant asserts that the record does not reflect a marked limitation in the domain of adapting or managing oneself, as claimed by Plaintiff. ECF Dkt. #14 at 22. Defendant states that the ALJ considered that Plaintiff primarily attributed her adaptive difficulties to physical impairments rather than mental impairments as required to meet Listing 12.04. *Id.* (citing Tr. at 57, 279-83). Additionally, Defendant notes that Plaintiff did not allege that any mental conditions limited her ability to work in her disability report completed as part of her application for benefits. *Id.* (citing Tr. at 262). Defendant also states that the ALJ discussed that Plaintiff: admitted that she worked as a stay-at-home mother until her children were taken away when she went to jail in 2014; cooked complete meals; went shopping; performed light housework; read; and attended church regularly. *Id.* (citing Tr. at 57, 59). Next, Defendant indicates that the ALJ noted that despite her allegations of frustration and/or anxiety that made functioning difficult, Plaintiff told a counselor that she liked to cook, listen to music, and walk her dog. *Id.* (citing Tr. at 59). Defendant also states that the ALJ indicated that Plaintiff's fiancé stated that she kept their home "very well" and cooked well, and that Plaintiff repainted her home and rearranged the furniture. *Id.* (citing Tr. at 59).

Regarding Plaintiff's allegation that the ALJ did not discuss each of her symptoms, the Defendant states that the ALJ was not required to discuss every item in the administrative record. ECF Dkt. #14 at 23 (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013); *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)). Defendant states that a review of the entire decision shows that the ALJ thoroughly considered Plaintiff's mental impairments and her limitations and concluded that she was not disabled. *Id.* Specifically, Defendant asserts that the ALJ discussed the symptoms Plaintiff claims were ignored. *Id.* at 24. Defendant avers that since the ALJ's finding that Plaintiff did not have a marked limitation in the domain of adapting or managing oneself is supported by substantial evidence, Plaintiff's argument that she meets Listing 12.04 fails. *Id.* Finally, Defendant contends that Plaintiff makes no attempt to explain

-15-

how the evidence shows that her impairments reach the level of severity required to medically equal the criteria of Listing 12.04 or any other listing.  *Id.* at 24-25.

Plaintiff fails to demonstrate that she had marked limitations in the domain of adapting or managing oneself.  A "marked limitation" is defined as "functioning in this area independently, appropriately, and on a sustained basis is seriously limited."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00F(2).  In the decision, the ALJ stated:

> As for adapting or managing oneself, [Plaintiff] has experienced mild limitations. [Plaintiff] alleges difficulties with her daily activities, but she attributes those difficulties primarily to her physical condition, rather than to any alleged mental impairment.  She remains able to care for her children, make complete meals, go shopping, do light housework, read, watch television, and attend church.

Tr. at 57.  The ALJ correctly notes that Plaintiff mainly attributed her adaptive difficulties to physical impairments, rather than mental impairments.  Tr. at 57, 279-83.  While Plaintiff did indicate that she was bipolar and that she had concentration problems, she did not indicate that her conditions impacted her memory or understanding.  *Id.* at 283.  Further, in her disability report submitted with her application for benefits, Plaintiff did not list any mental conditions that limited her ability to work.  *Id.* at 262.

Additionally, the ALJ cited activities that Plaintiff performed that were inconsistent with a finding of more than mild limitations in the domain of adapting or managing oneself.  Tr. at 57. Specifically, the ALJ noted that Plaintiff reported that she cared for her children, cooked, shopped, performed housework, read, watched television, and attended church.  *Id.*  Further, although Plaintiff claims that the ALJ  excluded evidence that she was angry, frustrated, experienced uncontrollable emotions and labile mood, aggressive, had a chaotic life, and engaged in self harm, the ALJ did consider these factors.  Evidence of each of these factors was considered when the ALJ provided a thorough summary of the medical evidence presented in this case.  *Id*. at 59-60.  Read in its entirety, it does not appear that the ALJ excluded evidence when making the decision, and Plaintiff cites no precedent indicating that the ALJ was required to cite the same medical evidence repeatedly at each stage of the decision.  Finally, although Plaintiff asserts that her impairments "at least equals" the requirements of Listing 12.04, she provides no further argument to this end and closes, in part, with "substantial evidence supports

-16-

a finding that [Plaintiff's] major depressive order met Listing 12.04." ECF Dkt. #13 at 14, 18. For the above stated reasons, substantial evidence supports the ALJ's decision finding that Plaintiff had mild limitations in the domain of adapting and managing and that Plaintiff did not meet or medically equal the criteria of Listing 12.04.

## VII.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.


Date: January 30, 2019                                   _____*/s/George J. Limbert*_____
                                                         GEORGE J. LIMBERT
                                                         UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

-17-